Our next case is number 20-11764 Jane Doe 1 v. Choice Hotels International et al. We have, let me see if I can pronounce your name correctly, Ms. Mikkelveld? Yes. Is that correct? That's correct. Okay, so she is arguing for the plaintiff's appellant and then we have Ms. Turner for Choice Hotels and Mr. Sager for Micro Hotel Inns, et al. Okay, Ms. Mikkelveld, we're ready to start whenever you are. Good morning, your honors, and may it please the court. I'm Tiana Mikkelveld on behalf of Plaintiff Appellants Jane Doe 1 v. Choice Hotels International. This court should reverse the District Court dismissed plaintiff's claims against the franchise or defendants because they failed to allege that the franchisors participated in the sex trafficking act itself and dealt with the plaintiff herself, but neither of those requirements are in the text of the statute. Additionally, the defendant's attempt to rewrite the statute to add modifiers and and that ultimately nullify the should have known meaning of the statute. What the defendants seek here is a sweeping exclusion for any corporation that's engaged in a typical franchise or relationship, but in Berrios v. CoreCivic, this court declined to read a limiting principle into the Trafficking Victims Protection Act where there was no such principle in the text of the statute. As this court held in Berrientos where Congress has written the statute plainly, it's up to Congress, not this court, to revive it. First, a requirement to allege that a plaintiff must allege that a defendant engaged in some participation in the sex trafficking act itself improperly narrows the text of section 1595, which requires that a defendant participate in a venture. Let me let me ask you a question about that because I think in my perception of this case is this all comes down to what it means to be a participant in a venture. What is the venture here? Define for me the venture that committed the federal crime. The venture, you have to be a participant in a venture that commits a federal crime. What is the venture? As plaintiffs have alleged here, Judge Brasher, the venture is the operation of the hotel. That is the operation of the Suburban Extended Stay and the microco. And so what plaintiffs have alleged here is that not that these defendants engaged in acts of sex trafficking and not that these franchise or defendants criminally violated the statute, but that they participated in ventures operation of these hotels that with franchisees and hotel owners did violate criminally the TVPA. So is your is your contention that, and I'm sorry if I interrupted Judge Brasher with his question, but is your contention that venture is sort of like enterprise in a Rico sense that the enterprise in and of itself doesn't have to be legal but is being operated to further an illegal operation or scheme? Our definition of venture, Judge Jordan, is based on the plain language of venture itself, which is defined in Black Claw Dictionary as an undertaking to perform a risk. And although defendants try to analogize enterprise to venture, our position is that here Congress chose the word venture and not the word enterprise. So the limitations that may apply in the Rico context should not apply here. But the venture, but the venture in your view, the way the way I took your answer to Judge Brasher's question, the venture itself doesn't have to be illegal or violative of the statute, right? That's exactly right, Your Honor. The venture itself does not have to be illegal. And that's exactly the point, which is that because the Trafficking Victims Protection Act addresses all forms of human trafficking, not just sex trafficking, defendants efforts to add the Yeah. I think I agree with you about that. I don't think the venture itself has to be illegal, but the venture has to have committed a federal crime. And that's where I'm just having some problems. It seems like if you define the venture really broadly to say it's just the operation of the hotel, then you have to say, well, that's the venture that committed the federal crime, which is federal sex trafficking. How do you, I mean, how have you alleged that if that's the venture? Plaintiff's amended complaint alleges that the franchisees and the hotel owners with whom the franchisors are in a venture, they know they're in a venture and they participate. Counsel, would you speak a little bit clearer? I'm having a little trouble hearing what you just said. Yes, Your Honor. My apologies. Thanks. That's better. The franchisor is in a venture with the franchisees and the hotel owners and plaintiffs have alleged that the franchisees and the hotel owners through their employees, which is how they act, have engaged in criminal violations of the TVPA through their active assistance of sex trafficking at the Suburban Extended Stay and the Microtel hotels. For example, plaintiffs have alleged the entire third floor of the Microtel was controlled by a trafficker with the assistance of employees at the Microtel. Under 1591, that's the criminal condition of the statute, that criminalizes knowingly harboring victims of sex trafficking. And it also criminalizes knowingly benefiting where you have recklessly disregarded the likelihood that force fraud or coercion would cause an individual to engage in commercial sex. And so those are the allegations of the criminal violation engaged in by the franchisees and the hotel owners with whom the franchisors are in a venture. And again, the participation in the venture is not the only grounds on which plaintiffs allege liability. Plaintiffs have also alleged that the defendants knowingly benefited financially from the operation of the hotel and that they should have known about the violations of sex trafficking at the Suburban Extended Stay and at the Microtel. There's also no reason why, as the district court found, the court needs to decide that the defendant interacted personally with the plaintiff. There's simply no requirement in the text of the statute, which makes a civil remedy available to a victim of a violation of the chapter. And in Berrientos, this court construed the language, whoever and person, to suggest that Congress did not evince any intent to restrict the statute to particular actors or to particular victims. Third, the district court... Let me ask you to address a hypothetical. I want to go back to the participant in the venture. If we define the venture, if we can define it that broadly to just be sort of the operation of the hotels, I mean, is the CEO of Microtel, is the CEO, is that a potential participant in the venture that could be held civilly liable for this? The short answer is maybe, Your Honor. And because the liability under the TVPA does not turn on the label that we affix to the commercial relationships or to the nature of the business, what the liability turns on is the knowledge and conduct of the individual. Right, right. But everything that you've alleged about should have known vis-a-vis Microtel as a corporation or any of these hotel companies as a corporation, I mean, the CEO would have that information. The CFO would have that information. The regional manager of the hotel chain would have that information. So I guess my question, if you define it so broadly that it's just the is there any limit on who in that chain could be civilly liable? I think the limit, Your Honor, would be from the text of the statute, whether they benefited financially from its operation and whether they should have known about the trafficking and the criminal violations taking place. Okay, let me ask you another hypothetical. So let's say I own a store, I own a convenience store, and I sell, you know, condoms or food or something to people who are sex trafficking, and I know that they're prostitutes or someone who's involved in that. I may not know that they're violating the Federal Sex Trafficking Act, but I should have known that they were violating it for some reason. Am I in a venture with those people because I'm selling them stuff that they use in their acts? The short answer is, it depends on if you also are benefiting financially from... I mean, I make money off of it because I sell them the stuff. So I mean, that's, I guess, the benefit financially, I think that's a separate element that you would have to show. But I guess my question is, are we participants in a venture together if I provide stuff to them? I think it's possible under the definition of venture if you're in an undertaking involving risk. But I do think you have to know that you are benefiting and you have to know that you're participating in a venture. So that would provide a sort of limit there. But again, liability under the TVPA doesn't arise merely from participating in a venture, it arises from the knowing benefit and criminal violation of the venture and the... whether you should have known about trafficking taking place. I'm not sure you needed to go quite as far in answer to Judge Brasher. In other contexts, a distinction is made between a buyer-seller relationship and a franchise relationship is clearly a venture. So you don't have to really answer the buy-sell a situation to prevail in this case, I think. I see my time has expired. May I briefly respond? Yes, of course. I agree, Judge Anderson, it may not be the case. But I think that what's important here is not that we apply categorical exclusions to participate in a venture because the text of the statute doesn't support that. I think that the text of the statute defines the outer limits and that Congress did not provide another limiting principle. And that's how the statute should be constricted. Can I ask one more question? So when I read the complaint, the admitted complaints, the venture that was alleged in the complaints was a sex trafficking venture. So where can I find an allegation? And there are a lot of complaints, so I'm giving, they're probably, it's probably in there somewhere. Where can I find sort of the venture that we're talking about and it's just the operation of the hotels in and of itself? Judge Brasher, the description of the hotel operating venture is described in our response brief at document 232 at page seven and page 22 specifically refers to the operation of the hotel. And the amended complaint itself does refer to the operation of the hotel in general. Okay. I'm not sure that I got that. You answered that your response brief dated because that's not sufficient. You have to have allegations in the complaint. Are there allegations in the complaint that the hotel operation is the venture? Yes, Your Honor, there are. And that's contained at paragraphs, excuse me, I'm looking at my notes. For the suburban extended stay, paragraphs 172 to 198 and the microtel is 199 to 226. And the specific venture is also referenced in paragraphs 28 and 33. All right. Thank you very much. You've saved your time for rebuttal. Okay. Ms. Turner, we'll hear from you first and you have seven and a half minutes. Your Honors, I believe that we had scheduled Mr. Sager to go next, but I'm happy to go. I have you listed first, but that doesn't matter. So if Mr. Sager wants to go first, that's perfectly fine. Mr. Sager, you're on mute. Good morning, Your Honors, and may it please the court. My name is David Sager and I represent Wyndham Hotels and Resorts, Inc., the ultimate parent company of defendant microtel, the franchisor of the microtel brand. As Ms. Turner mentioned, I'll be sharing the appellee's time and I intend to focus on shotgun pleading and TBPRA issues. Your Honors, the district court properly... Let me ask you this. With respect to shotgun pleading, my reading of the district court order is that he did not rely on that. You quote, I think page six, as I recall, that he does say he paraphrases your two arguments, Twombly and shotgun pleading, and he says, I agree. But then he says everything after that, all through the order, is clearly a decision based on Twombly. So it seems to me that he, district court, did not rule on that basis. And frankly, it'd be a little bit unfair to affirm on that basis when the plaintiff probably read the order like I did and thought, well, there's no way I can amend to avoid shotgun pleading because the real basis is Twombly. How do you respond to that? Well, thank you for your question, Your Honor. And the bottom of page six of the opinion does provide notice, but I think it has to be viewed in the context of what was briefed and argued below. The shotgun pleading argument was the lead argument for defendants, certainly for the Wyndham defendants. It was the lead argument, and it was the focus of a good deal of the district judge's discussions with plaintiffs below. He asked them repeatedly, by my count more than seven times, where they could identify for complaint that didn't allege or make allegations against a broad group of what they called microtel defendants or defendants generally, but pinpointed any sort of allegation that was directed to microtel or Wyndham. And each and every time they said they did not or they could not. And so for them to say now that it was surprise that on appeal, we argued that they failed to I don't know what was in their minds, obviously, but I think they were on fair notice by virtue of the extended discussion on that topic, both in the briefing and at oral argument where the judge ruled and where the judge invited them because it was a shotgun pleading to amend. So all of those things, Your Honor, I think need to or can be factored into your interpretation of an impermissible shotgun pleading. The court agrees on page six. Well, Mr. Sager, I'll tell you that I share Judge Anderson's preliminary view. There's nothing in the text of that order that suggests that the district court bought or ruled on the shotgun pleading ground. There are no discussion of shotgun pleading standards. There's no explanation of why the complaint was a shotgun pleading. It's all about the sufficiency of the complaint. In any event, let's move on to the merits, assuming we disagree with you on the shotgun pleading issue. The district court said on page nine, and again, this doesn't necessarily affect the end result in the case, but I want to get your thoughts on this. The district court said that to establish liability, not only knowledge, but some participation in the sex trafficking act itself had to be shown. That has to be wrong, right? That second part of it. If you are allowing liability for people who benefit financially from being involved in a venture they have knowledge of, right? I would say that that statement in isolation, Your Honor, could be wrong, but the statement needs to be read in the context of the claims that were before Judge Ray, which included two perpetrators. Hold on. Hold on. Hold on. Hold on. I'll let you continue because I think that's an important point that you're making, but we have to write an opinion, not only figuring out the result in this case, but laying out a standard. And I want to make sure I understand your position. If your client or any other franchisor, right, had been told repeatedly by law enforcement authorities that this was happening in a hotel that it had franchised, and it had video sent to it of what was happening on a certain floor or in certain rooms, and they had police complaints and charges and all of that, the hotel chain doesn't have to be involved in the sex trafficking itself for there to be You are correct, Your Honor. I agree with you that the hotel doesn't need to be, or the franchisor doesn't need to be involved in the physical act of the sex trafficking. But the mere notice that sex trafficking occurred, and let's take Your Honor's example of the police coming. I didn't say the police came. I said the police told the franchisor what was going on. And I appreciate that. And what that indicates to us is that there may be a situation where the hotel is being used as an instrumentality by third-party criminals. It does not in and of itself mean that the hotel, let alone the franchisor or the parent of the franchisor, were in any way participating in the venture. Regrettably, crime can happen at a hotel. I agree with you. Those are different questions. Those are different questions. And I'll stop with this. So direct participation in the sex trafficking venture is not a requirement of the statute when you're applying the beneficiary side of civil liability, right? Correct. I need to know under the statute that the sex trafficking, or I should have known that sex trafficking is occurring, and I need to knowingly benefit and participate in that venture which is leading to the venture or the conduct that is a violation of 1591. I interrupted you, so go right ahead, or I think there's pressure. So I have a question about something you just said, which I think this is kind of the way I understood something that the district court said. I want your thoughts on this. I mean, the complaint here argues, it doesn't argue, it doesn't say that there's a venture that's otherwise legal that then participated in sex trafficking. It argues specifically that there was a sex trafficking venture, that the venture, the definition of venture, was one that engaged in sex trafficking. I mean, what do you say about that as a way to understand why the district court said, well, the franchisors don't directly engage in sex trafficking, and so they're not part of the venture? I agree wholeheartedly that that was what was before the district court. The plaintiffs alleged that we were perpetrators, that the franchisors and the parent of the franchisors had perpetrator liability. They only abandoned those claims after the appeal was filed. The district court was addressing an allegation and a complaint that used the words sex trafficking venture, to which we responded. And had they, your honor, and may I complete the thought, given that my time is up? Yes, please go right ahead. And had they thought that, had they said, well, we take your honor's counsel below, they would have and could have and should have amended. Instead, they chose to stand on a pleading. And so here we are looking at an opinion that not addressing the claim that they are making now in arguing that there's a franchisor venture, which this court in the Petland case made clear that the mere operation or franchise relationship is not a venture in the of the nature that is being asserted in the TBPRA claim. It is not sufficient that somebody has a long-term relationship and 15 years into it, there's a trip comment, or there's a dollar spent at a hotel. And I'm not minimizing the importance of the money, but there's a dollar spent at a hotel. And suddenly that franchise relationship magically becomes a venture for purposes of a TBPRA claim without any indication in a pleading or in response to numerous questions at argument that the franchise or the parent of the franchise or were involved. And they were asked repeatedly that very specific question. What is it that the franchise wars did or could have done or should have known? Explain it to us. And what they did was they said there were events at the hotel that they could have known had they been there, perhaps, which is exactly what Judge Kogan addressed in the SJ opinion. When he said, this is a bridge too far. It goes from the possibility or plausibility of a pleading to something that someone might guess. I have a question. And I understand that if there is no allegation that the operation of the hotel is a venture, then this question is moot. But if there are allegations in the complaint that the operation of the hotel is the venture and that the franchisee did assist, in effect, aid and abet the sex trafficking so that the franchisee did the crime through the venture. And if the franchise or should have known that and nevertheless continued allowing the franchisee to use it to brand name, would that not qualify under the beneficiary defense, the beneficiary claim? Your Honor, it could if they could also allege that the franchise or in the franchisee shared some common purpose. So it is possible that a franchisee is engaged in some way in the bad acts. We can have the situation where the franchise is used as an instrumentality. We can have a situation where the franchisee is involved in the bad acts. What a plaintiff needs to allege at the pleading stage is that the franchise or was in on it. It's the Riccio. First, you don't have to he doesn't have to commit an overt act as I see it, but he has to know about it and then continue allowing the brand name to be used. The franchise or needs to know that he is participating in a venture that he should have known is involved in sex trafficking. And I and I compare this to the Riccio case written by Judge Souter by designation on the First Circuit. And if we look at that case and compare it to what was alleged here, I think it makes the point very clear. In that case, the hotel operators and owners were one in the same. They lived at the hotel. They were seen intermingling with the trafficker, high fiving the trafficker. And there was an allegation that trafficking victim herself reached out to the owners and operators of the hotel and asked for help. And they said no. So to your honor's point, if that was a franchise or involved in that setting, I think there absolutely could be liability. What Judge Ray found below after extensive argument and questioning was that plaintiff had not alleged any of those things. They alleged simply online reviews. And the right to inspect, and they said, had we inspected, had we been there, we might have seen something that is a far cry from Riccio. That is a far cry from the tacit agreement language from the Southern District of Ohio. That is a far cry from the SJ case. It is a far cry from any case that tries to tether the actual purpose of a franchise or to the most heinous conduct any of us can imagine. And what plaintiffs have done here is said simply, because you are in the industry, because you know sex trafficking can occur in the industry, and because there's a TripAdvisor comment, you are de facto subject to a TVPR claim. And it is that overreaching with which we disagree. All right, Mr. Sager, thank you so much. Thank you, Your Honor. Ms. Turner. Thank you, Your Honor. May it please the court. I'd like to start by circling back to Mr. Sager's comments about the Riccio case, because I think one point that he wasn't able to make is that the hotel owner in that case and the alleged trafficker were previously in a commercial sex venture with one another. They had run a prostitution business. They were high-fiving in the parking lot talking about starting their prostitution business again. And it is in the context of that background that Justice Souter found that it was not unreasonable to think that they should have known that the woman that was being held at the hotel was there against her will. And so what I'd like to focus my argument on is, as opposed to the definition of the word venture itself, the requisite causal link, which I believe relates to the knowledge. And I think that the known or should have known language from 1595 is most appropriately used to modify whether or not an actual crime has occurred. In this case, we're talking about adults for each of the three cases that my client is involved in. And I think each of the four cases that are before this court, which means force, fraud, or coercion. And so someone would have to have actual, a defendant would have to have actual knowledge of the crime, which is force, fraud, or excuse me, they would have to, should have a constructive knowledge of the actual crime, which is force, fraud, or coercion. But they have to have actual knowledge that they were participating in the a 1591 claim is commercial sex. Now for, even though it's not illegal under 1591, that is the predicate act. Under a labor violation, a symbol, the predicate act would be that you're employing people. So Miss Mikkelvedt, I know pointed the court to its recent core civic decision. In that case, there's no question that core civic knew that it is in the business of employing people. And so if a plaintiff can allege that you should have known that those people were being employed through force, as opposed to voluntarily, then you, then you might be held liable under 1595. In the 1591 context, you have to have actual knowledge that you're participating in something that some venture that involves commercial sex. And you should have known that that commercial sex was not happening voluntarily, at least as to an adult. This case doesn't involve minors. So we could talk about that for another day. And I think- Why is that the right line? I mean, I tend to agree with you that the person to participate in something requires that you have some knowledge or you're doing something to participate. If you're a participant, you have to participate, but why do you have to have participate in commercial sex? Couldn't you, for example, be a business owner and own a, you know, a massage parlor or a nail salon or, you know, whatever. And there is, you know, a strip club, not commercial sex. But it turns out that there's human trafficking, sex-related human trafficking going on by the employees at that facility that you should have known about and that you're profiting from. I mean, can't that be something that this statute applies to? Judge Bradshaw, I think that you're correct that in those situations, if you have actual knowledge that there is some underlying participation, meaning, and I think we can apply the 1591 definition from E-4. I don't see how that would eliminate the known or should have known. I think that you have to show that you were knowingly assisting, supporting, or facilitating something that involves commercial sex. Meaning, in the example of the gas that's been posed, assume there are lots of gas stations that are franchised. So, assume that you're a franchiser of a gas station. The gas station is selling condoms, which are then used in these sex acts. You would have to at least know that you are selling the condoms that are used in commercial sex acts. And so, that is something that they have to show actual knowledge of because otherwise there's no causation. So, what I would analogize it to is this Court's decision in White where it adopted the footnote from the Fifth Circuit decision in Copeland, where it explained that if, that the reason that 1591 isn't a strict liability crime in the case of a minor where you have a reduced science or reasonable opportunity to observe is because the defendant was knowingly involved in a commercial sex act. You still have to show some sort of knowledge that you were engaging in something related to the underlying predicate act because otherwise, an otherwise innocent venture, someone knows that they're participating in a completely innocent venture that has nothing to do with commercial sex. It's a step too far to say that you should have known it was involving commercial sex and then also that you should have known that the commercial sex was not voluntary or was engaging minors. And so, I think if you get rid of the participation element or the knowledge that is required with respect to that participation element, you create what is really either a strict liability case or even a absolute liability because it would just be a matter of cost shifting. And I think that's consistent with other courts that have looked at this case, even courts that have said that they are rejecting the 1591 definition as applied to 1595. Have you used words like, for example, in the AB case from the District of Oregon, the district court said that there would have to be allegations of facilitation in the AB case from the Eastern District of Pennsylvania. The court said those facilitating trafficking, the facilitators who even in the Southern District of Ohio, in the AC case, the court said that the plaintiff's theory was that they were enabling, harboring, held, facilitating, and financially benefiting. Those may make a case stronger, but tell me, this is the way I read, at least preliminarily, this is the way I read the elements of a 1595 civil claim. There has to be a venture. The venture has to engage in an act in violation of this chapter and the act can be singular. So far so good? Yes. The defendant in question, here the franchisor, must know or should know about the venture's involvement or engagement in that violation, right? Yes. And the defendant, the franchisor here, must benefit financially or otherwise from the venture, right? I think that's right. So there's no facilitation or assistance requirement, right? If you assume the worst case for a franchisor, where there is sex trafficking galore happening in a hotel for a year, okay? Everybody knows about it. The franchisor is told by the franchisee, is told by victims, is told by the police, and the franchisor doesn't help the venture, but doesn't do anything either, but benefits financially from the income that's received from the sex trafficking operation that's happening at the hotel. Is the franchisor covered by 1595? Under that factual scenario, I think it's different than what the test that you originally provided, because I think there does have to be some sort of participation element in something more than- Where is the participation element in 1595a? In 1595, it says that there has to be a knowing benefit that derives from participation in a venture, which you either know or should have known has violated the act. And so the violation of the act, if you look at this court's decision in white, the actual violation of the criminal violation here isn't commercial sex. That is not the criminal violation under 1591. The criminal violation is force, fraud, or coercion. And so they have to know or should have known. They have to have constructive knowledge of force, fraud, or coercion. They have to have actual knowledge of their participation. And there's no reason that that should be determined differently, or it would make it inconsistent under 1593a, which was adopted at the same time as 1595 and 1591. And there's no reason that that phrase needs to be interpreted three separate ways under those three literally verbatim statutes. I see my time has expired. Thank you very much, Ms. Turner. Ms. Mickelvelt. Thank you, your honors. In the language of Mamadi versus Berzane, what the defendants would have this court do is not actually read, interpret, or construe the statutory language, but amend, modify, and revise it. Plaintiffs did assert perpetrator and beneficiary civil claims against these defendants in its amended complaint. And what defendants have continued to do, even though the only issue before the court now is section 1595, the civil beneficiary claim language, is conflate the perpetrator claim and the beneficiary claim. And the district court's order followed suit and did not in any way, shape, or form distinguish its dismissal when it required participation in the Sex Trafficking Act itself. Ms. Mickelvelt, how do you read the word participation in 1595A? What does that word modify or require? Participate means to take part in, and it means to take part in the venture, which means an undertaking involving risk. That's all the statutory language. The language is clear, and so the court doesn't need to resort to any other avenues in order to interpret that language, as this court has admonished many times. And unlike Choice's argument, which suggests that we should incorporate the definition of participate in a venture from 1591E4, there are three reasons that's wrong. First, the amendment that added that statutory language, that definition, specifically indicated it wasn't intended to limit any claim. Second, section 1591 itself applies the definitions in this section. That's the language of 1591. And it's clear that if you incorporate the definition of participate in a venture from 1591, you have nullified the language, the should have known language, that is in 1595. But defendants have argued that the plaintiffs are trying to impose a duty on defendants to prevent sex trafficking, but that's not what 1595 requires. All it does is say that franchise workers cannot turn a blind eye, continue to profit from trafficking, when they should have known about the criminal violations of the TVPA taking place. Unless the court has any further questions. Yeah, I have some more questions. So I just, so I'm looking at the complaint and I think that if for some reason you make different allegations against the different defendants, let me know, but I'm just going to use the micro tell ones because that's what's in front of me here. And there are a bunch of different the complaint says there was a well-established sex trafficking venture at the micro hotel Atlanta comprising traffickers, the hotel's employees, management owners, and franchisor, as well as others involved in the sex trafficking of victims at that hotel, including this is Jane Doe three's complaint. So including Jane Doe three, I guess I understand. I mean, I look in the complaint, I see allegations about the sex traffickers. I see allegations about the hotel's employees. I even see some allegations about the management, but I don't see allegations about the franchise or participating in a sex trafficking venture. Can you just explain that to me? Sure. Your honor, if the court looks, I'm looking at, so it might not match up exactly because I'm looking at the Jane Doe one complaint, but in paragraph 33, and this is about the micro hotel defendants, plaintiffs allege that Wyndham hotels and resorts, along with the other defendants associated with the micro hotel, were inextricably connected to the renting of rooms at the micro hotel in its meats, which they benefited from. We go on to allege about the operation of the hotel that Wyndham controlled the policies, training, and procedures at the micro hotel, and that they written by Judge Souter. The court reminded the district court that the court is required to accept the allegations taken as a totality of the complaint. I mean, what the court said there is we give attention to the whole body of allegations as circumstantially supplying meaning to particular acts by those defendants. The trial judge found too ambiguous to support the claims when considered in isolation. So the totality of the complaint states the civil beneficiary claim against these defendants, including the franchisors. And it's important to note that although defendants like to say that plaintiffs alleged that, for example, I complete my thought. Yes, go right ahead. That defendants reserve the right to inspect the hotels. What the complaint actually says is that Wyndham and micro hotel did in fact inspect the Yeah, and so can I ask you just to address one more part of the complaint that's giving me confusion here? So with respect to each of these defendants, you make an allegation like this, and this is just one. This is the first one I came to as I was scrolling through the Jane Doe one. The Red Roof Atlanta defendants knew of or should have known of the sex trafficking venture at the Red Roof Atlanta. It seems like to say that they knew of it or should have known of it. Where's the allegation that they participated in it? I guess it seems like the allegations, and that's where you talk about inspecting and, you know, the trafficking activity would have been apparent. But, you know, lots of people knew of it or should have known of it. Where did they participate in it? I guess as well. Well, those allegations would relate to those about the control, the training, the standards, the procedures, operation and inextricably being All right. Thank you all very, very much. We appreciate the help. Thank you. Thank you, Your Honor.